UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
JAMIE POSEY,

                    Plaintiff,

          - against -

ANDREW SAUL, Commissioner of Social
Security,[1]

                   Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**

19-CV-4578 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Jamie Posey brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's claim for Social Security Disability Insurance Benefits ("DIB"). Before the Court are the parties' cross-motions for judgment on the pleadings.[2] Plaintiff seeks an order remanding this matter for further administrative proceedings, and the Commissioner asks the Court to affirm the denial of Plaintiff's claim. For the reasons that follow, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion.

---

[1] Andrew Saul became Commissioner of the Social Security Administration on June 17, 2019. Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul is substituted as Defendant in this action. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). The Clerk of Court is respectfully directed to update the docket accordingly.

[2] Though Plaintiff has filed his motion as a motion for summary judgment, the Court construes it as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

# BACKGROUND

## I.    Procedural History

On February 18, 2015, Plaintiff filed an application for DIB, alleging disability beginning on February 24, 2014. (Administrative Transcript ("Tr."),[3] Dkt. 7, at 183–84.) On April 27, 2015, Plaintiff's application was initially denied. (*Id.* at 65.) On June 11, 2015, Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). (*Id.* at 92–93.) On July 14, 2017, Plaintiff appeared with counsel before ALJ David J. Begley via video-conference. (*Id.* at 30–64.) In a decision dated October 5, 2017, the ALJ determined that Plaintiff was not disabled under the Social Security Act (the "Act") and was not eligible for DIB. (*Id.* at 12–28.) On June 10, 2019, the ALJ's decision became final when the Appeals Council of the SSA's Office of Disability Adjudication and Review denied Plaintiff's request for review of the decision. (*Id.* at 1–6.) Thereafter, Plaintiff timely[4] commenced this action.

---

[3] Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript (appearing in the lower right corner of each page) and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

[4] According to Title 42, United States Code, Section 405(g),

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42. U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on June 15, 2019, and that, because Plaintiff filed the instant action on August 8, 2019—54 days later—it is timely. (*See generally* Complaint, Dkt. 1.)

## II.     The ALJ Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled. If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the impairment is not severe, then the claimant is not disabled.

In this case, the ALJ found that Plaintiff suffers from the following severe impairments: degenerative disc disease-lumbar and degenerative joint disorder-right knee. (*Id.* at 17 (citation omitted).) The ALJ then progressed to the third step and determined that Plaintiff's severe impairments did not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)" (the "Listings"). (*Id.* at 18.) Moving to the fourth step, the ALJ found that Plaintiff maintained the residual functional capacity ("RFC")[5] to perform

> sedentary work as defined in 20 CFR 404.1567(a) except he is prohibited from climbing ladders, ropes, and scaffolds. He is further limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. He would need to avoid concentrated exposure to extreme humidity and wetness. He also would need to avoid slippery and uneven surfaces as well as hazardous machinery, unprotected heights, and open flames.

---

[5] To determine the claimant's RFC, the ALJ must consider the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

(*Id.*)  Based upon the RFC finding, the ALJ determined that Plaintiff was incapable of performing his past relevant work as a department supervisor and security guard (*id.* at 22), but that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" including the representative occupations of addresser, nut sorter, and cuff folder (*id.* at 23).  The ALJ accordingly concluded that Plaintiff was not disabled.  (*Id.*)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits.  42 U.S.C. § 405(g).  In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (internal quotation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation and alterations omitted).  In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (internal quotation omitted).  If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld.  42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (noting that "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the court] to glean the rationale of an ALJ's decision" (internal quotation omitted)).  Ultimately, the reviewing court "defer[s] to the Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) and, "[i]f evidence is susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld[,]" *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) failing to comply with Social Security Ruling ("SSR") 96-7p in not considering the side effects of Plaintiff's medication; (2) failing to comply with SSR 96-8p in determining Plaintiff's RFC; (3) failing to evaluate Plaintiff's subjective complaints about his symptoms; (4) concluding that Plaintiff has the RFC to perform sedentary work; (5) failing to consider Plaintiff's efforts to obtain relief from his symptoms as enhancing his credibility; and (6) failing to properly evaluate Plaintiff's impairments under Listing 1.04A at step three. (Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Mot."), Dkt. 9, at 14–23.) The Court addresses Plaintiff's arguments sequentially, according to the ALJ's requisite five-step inquiry.

## I.      The ALJ's Step-Three Severity Finding

Listing 1.04A, which applies to disorders of the spine, provides for disability where an individual's spinal disorder

> result[s] in compromise of a nerve root (including the cauda equina[6]) or the spinal cord.  With: [e]vidence of nerve root compression characterized by neuro-anatomic[7] distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. pt. 404, subpt. P, app. 1, sec. 1.04, 1.04A.

---

[6] The cauda equina "comprises the roots of all the spinal nerves below the first lumbar." *Cauda equina*, Stedman's Medical Dictionary 151640 (Nov. 2014).

[7] Neuroanatomy is the "anatomy of the nervous system, usually specific to the central nervous system." *Neuroanatomy*, Stedman's Medical Dictionary 600200 (Nov. 2014).

Here, the ALJ's entire step-three severity rationale reads: "I assessed [Plaintiff's] impairments under Section 1.00 of the listings.  However, the medical evidence falls short of the criteria of this section and no medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination."  (Tr., at 18.)  Plaintiff maintains that, contrary to the ALJ's finding, the record contains substantial evidence of Plaintiff's lumbar spine disorder, sufficient to meet the requirements of Listing 1.04A. (Pl.'s Mot., Dkt. 9, at 20–22.)  The Commissioner argues that "Plaintiff has failed to identify evidence of motor loss accompanied by sensory or reflex loss." (*See* Memorandum of Law in Support of the Defendant's Cross-Motion for Judgment on the Pleadings ("Def.'s Br."), Dkt. 14, at 21 (internal quotation omitted).)  The Court considers each requirement of Listing 1.04A in turn.

**A.      Listing 1.04A Requirements**

**1.      Nerve Root Compression and Pain**

The Court finds there is substantial evidence in the medical record that Plaintiff met the criteria for nerve root compression.  On November 18, 2014, Joshua Reimer, M.D., Plaintiff's treating physician and pain management doctor, diagnosed Plaintiff with discogenic pain and lumbar neuritis,[8] as well as diplegia.[9]  (Tr., at 285.)  On August 23, 2014, an MRI of Plaintiff's lumbar spine revealed "a right paracentral disc herniation and diffuse disc bulge with direct impingement upon the S1 nerve roots" and "significant left lateral recess stenosis."[10]  (*Id.* at 300.)

---

[8] Neuritis is an "[i]nflammation of a nerve."  *Neuritis*, Stedman's Medical Dictionary 599930 (Nov. 2014).

[9] Diplegia is the "[p]aralysis of corresponding parts on both sides of the body."  *Diplegia*, Stedman's Medical Dictionary 250680 (Nov. 2014).

[10] "Lumbar spinal stenosis is a condition that may occur in association with degenerative processes" and may "manifest[] by chronic nonradicular pain and weakness, and result[] in

On January 9, 2015, Dr. Reimer diagnosed Plaintiff with chronic lumbar neuritis. (*Id.* at 290.) An April 13, 2015 diagnosis revealed a "paracentral disc herniation L5-S1 with underlying diplegia." (*Id.* at 299.) On May 11, 2016, an MRI of Plaintiff's lumbar spine showed "S1 impingement from the left paracentral herniation" (*id.* at 342), and a diagnosis on the same day noted that Plaintiff had "neural impingement on imaging representing 16 points" and "sensory involvement in the dermatomal distribution representing 6 points and positive dural tension signs representing 4 points for a total of 26," with a "[s]everity ranking F[11] on lumbar radiculopathy permanency"[12] (*id.*).

### 2. Limitation of Motion of the Spine

The record evidence also shows that, on February 29, 2016, while Plaintiff's "range of motion of the cervical spine was normal," the "[r]ange of motion in the lumbar spine showed pain at 60 [degrees] flexion, 10 [degrees] extension, 35 [degrees] right and left lateral bending and rotation." (*Id.* at 373.) On May 11, 2016, Dr. Reimer assigned "[s]everity ranking F on [Plaintiff's] lumbar radiculopathy permanency." (*Id.* at 342.) In an examination dated February 29, 2016, in connection with Plaintiff's workers compensation claim, Eduardo Alvarez, M.D., an orthopedic surgeon, found that the diagnosis of "[s]prain, lumbosacral spine, with L4-5, L5-S1

---

inability to ambulate effectively." *Spinal disorders—Lumbar spinal stenosis*, 3 Soc. Sec. L & Prac. § 42:179 (Feb. 2020).

[11] According to the referenced 2012 New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity ("NYS Guidelines"), the severity ranking ranges from D to J, from most to least severe, for lumbar radiculopathy under Table S.11.7(b). New York Workers' Compensation Board, *New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity*, December 2012, at 71, http://www.wcb.ny.gov/content/main/hcpp/ImpairmentGuidelines/2012ImpairmentGuide.pdf.

[12] Radiculopathy is a "disorder of the spinal nerve roots." *Radiculopathy*, Stedman's Medical Dictionary 748650 (Nov. 2014).

herniated nucleus pulposus,[13] status post 2 lumbar epidural steroid injection (LESI)" was "correct and supported by objective findings" and "causally related to the injury of records." (*Id.* at 374.) He further opined that there was "permanency [of disability] to [Plaintiff's] lumber spine."[14] (*Id.*)

### 3.   Motor Loss and Sensory or Reflex Loss

Listing 1.04A requires "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." 20 C.F.R. pt. 404, subpt. P, app. 1, sec. 1.04, 1.04A. The Commissioner argues that Plaintiff has not met his burden in demonstrating evidence of this requirement, citing to various instances of "intact sensation; no motor deficits (*i.e.*, 'no focal weakness'); and normal (or near normal) reflexes." (Def.'s Br., Dkt. 14, at 21 (internal citations omitted).) However, the referenced records contain evidence qualifying Plaintiff's purportedly normal motor functions of certain body parts (*see, e.g.*, Tr., at 290 ("[T]here is hypertonia and hyperreflexia[15] in the lower extremities with no focal weakness.")), which is not inconsistent with Plaintiff's indications of motor loss in other body parts (*see, e.g.*, *id.* at 342 (indicating "[n]ormal sensation in left lower extremity myotomes," but that Plaintiff had "sensory involvement in the dermatomal distribution representing 6 points and positive dural tension signs representing 4 points for a total of 26")).[16] A November 18, 2014 physical examination by Dr. Reimer revealed

---

[13] The nucleus pulposus is "the soft fibrocartilage central portion of the intervertebral disc." *Nucleus pulposus*, Stedman's Medical Dictionary 616790 (Nov. 2014).

[14] Dr. Alvarez added that "[b]ased on the 2012 [NYS Guidelines], under Table 11.1, Spine Conditions – Non-Surgically Treated, there is Medical Impairment Class 4, Severity Ranking E." (*Id.* at 374.)

[15] Hypertonia is an "[e]xtreme tension of the muscles or arteries." *Hypertonia*, Stedman's Medical Dictionary 426730 (Nov. 2014). Hyperreflexia is an "exaggeration of the deep tendon reflexes; may be generalized, regional, or focal." *Hyperreflexia*, Stedman's Medical Dictionary 425830 (Nov. 2014).

[16] Pursuant to Table S11.4(b) of the NYS Guidelines, a category of 6 points denotes a sensory deficit of "[t]otal sensory loss," and a category of 4 points denotes "[d]iminished or altered

that Plaintiff had "hypertonia with 3+ reflexes in the Achilles bilaterally." (*Id.* at 285.) On January 9, 2015, Dr. Reimer diagnosed Plaintiff with "hypertonia and hyperreflexia in the lower extremities with no focal weakness." (*Id.* at 290.) In a May 11, 2016 examination, Plaintiff reported "that after sitting for 10 minutes, he [felt] numbness and burning in an S1 distribution." (*Id.* at 341.) On June 21, 2017, Dr. Reimer found that Plaintiff showed

> [h]yperreflexia and clonus[17] in both lower extremities. Less than 10 [degrees] of lumbar flexion due to pain. Exquisite tenderness to the L5-S1 facet bilaterally and the interspinous ligament at L5-S1.

(*Id.* at 324.) Dr. Reimer additionally diagnosed Plaintiff with symptomatic lumbar neuritis from a disc herniation, chronic diplegia, and gait dysfunction. (*Id.*) His diagnosis noted that Plaintiff was "permanently partially disabled due to lumbar disc herniation and chronic diplegia." (*Id.* at 325.)

The record further indicates Plaintiff's sensory loss related to radiculopathy. (*Id.* at 350.) On May 9, 2015, Jaspreet Sekhon, M.D., an orthopedic surgeon, noted that Plaintiff's "[r]ight leg radiculopathy caus[ed] numbness and tingling" and that this "numbness and tingling in the leg [was] a nerve issue" and that Plaintiff's meniscus[18] was not the root of these symptoms. (*Id.* at 350.) A neurological examination on February 29, 2016 revealed "no motor, sensory, or reflex

---

sensation." *See* NYS Guidelines 69, online at http://www.wcb.ny.gov/content/main/hcpp/ImpairmentGuidelines/2012ImpairmentGuide.pdf (last visited July 12, 2020).

[17] Clonus is "[a] form of movement marked by contractions and relaxations of a muscle, occurring in rapid succession seen with, among other conditions, spasticity and some seizure disorders." *Clonus*, Stedman's Medical Dictionary 182440 (Nov. 2014).

[18] Meniscus is a "structure of the knee and [various] joints" therein. *Meniscus*, Stedman's Medical Dictionary 541680 (Nov. 2014).

changes except for hypoesthesia[19] over the outer aspect of the right leg and along the dorsal and medial aspect of the right foot." (*Id.* at 373.) On September 26, 2016, Dr. Sekhon noted Plaintiff had "decreased quad activation and moderate VMO atrophy,[20] slightly worsened than previously" with "palpable tightness of the semimebranosus with associated tenderness to palpation." (*Id.* at 355.) Dr. Sekhon further noted Plaintiff's "patello-femoral syndrome[21] related to muscle weakness." (*Id.*) On June 22, 2017, Dr. Sekhon opined that

> some level of VMO will be permanent and will not match the contralateral side in part due to chronic nerve root impingement, in part due to patellofemoral chondromalacia[22] and having had two surgeries in the knee, and also possibly in part to his diplegia.

(*Id.* at 396.)

### 4.   Positive Straight Leg Raising Test

The record documents positive straight leg raising ("SLR") tests for Plaintiff on August 22, 2014 (*id.* at 272) and on November 18, 2014 (*id.* at 285). On February 29, 2016, an SLR test "elicited leg and back pain at 60 [degrees] on the right side and 90 [degrees] on the left side." (*Id.* at 373.)

---

[19] Hypoesthesia, a synonym of hypesthesia, *see hypoesthesia*, Stedman's Medical Dictionary 428530 (Nov. 2014), is "[d]iminished sensitivity to stimulation," *hypesthesia*, Stedman's Medical Dictionary 427260 (Nov. 2014).

[20] "VMO" likely refers to the vastus medialis muscle. *See Musculus vastus medialis*, Stedman's Medical Dictionary 578430 (Nov. 2014).

[21] Patellofemoral syndrome is "anterior knee pain due to a structural or functional disturbance in the relation between the patella and distal femur." *Patellofemoral syndrome*, Stedman's Medical Dictionary 886680 (Nov. 2014).

[22] Chondromalacia is the "[s]oftening of any cartilage." *Chondromalacia*, Stedman's Medical Dictionary 171890 (Nov. 2014).

**B.      Appropriateness of Remand**

Remand is appropriate with respect to an ALJ's finding that a claimant's impairments do not meet the Listings if the district court is "unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ." *Perozzi v. Berryhill*, 287 F. Supp. 3d 471, 483 (S.D.N.Y. 2018) (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982), and collecting cases); *see also Rivera v. Astrue*, No. 10-CV-4324 (RJD), 2012 WL 3614323, at *11–12 (E.D.N.Y. Aug. 21, 2012) (remanding for further administrative proceedings where the ALJ failed to proffer specific rationale for plaintiff not having met the Listing requirements and where the ALJ's rationale was not evident from the balance of the evidence).  The possibility that a plaintiff's impairments do not meet or equal the requirements of Listing 1.04A "does not relieve the ALJ of his obligation to discuss the potential applicability of Listing 1.04A, or at the very least, to provide plaintiff with an explanation of his reasoning as to why plaintiff's impairments did not meet any of the listings." *Norman v. Astrue*, 912 F. Supp. 2d 33, 81 (S.D.N.Y. 2012) (citations omitted).

Here, the Court finds that there is conflicting evidence as to whether Plaintiff's motor loss and sensory or reflex loss fulfill the required severity under Listing 1.04A.  Although an ALJ is not obligated to thoroughly explain his reasoning at step three where other portions of his decision may support his step-three severity finding, *see Ryan v. Astrue*, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014), in this case the ALJ's step-three explanation is so cursory, and his step-three finding so otherwise unexplained elsewhere in the decision, that it leaves the Court "unable to fathom [his] rationale in relation to evidence in the record," *Perozzi*, 287 F. Supp. 3d at 483 (internal quotation and citation omitted); *see also McIntosh v. Berryhill*, No. 17-CV-5403 (ER) (DF), 2018 WL 4376417, at *23 (S.D.N.Y. July 16, 2018) (recommending remand "[i]n the absence of an

explanation of the conflicting evidence as to Listing 1.04(A)"). Accordingly, the Court finds that remand is warranted based on the insufficiency of the ALJ's explanation of his finding at step three.

## II.    The ALJ's RFC Determination

At step four, the ALJ determined that Plaintiff had the RFC to perform "sedentary work" subject to certain restrictions. (Tr., at 18.) The Court reviews this finding to determine whether it is supported by substantial evidence in the record.

### A.    Plaintiff's Self-Reported Functioning and Subjective Complaints of Pain

The Court first addresses collectively Plaintiff's various arguments that the ALJ failed to (1) properly consider the side effects of Plaintiff's medication, (2) evaluate Plaintiff's subjective complaints about his symptoms, and (3) consider Plaintiff's efforts to obtain relief from his symptoms. (*See* Pl.'s Mot., Dkt. 9, at 14–17, 19–20.)

"The ALJ must follow a two-step process to evaluate a claimant's assertions of pain and other symptoms." *Cabassa v. Astrue*, No. 11-CV-1449 (KAM), 2012 WL 2202951, at *13 (E.D.N.Y. June 13, 2012). "At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(b)). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id.* (alteration omitted) (citing 20 C.F.R. § 404.1529(a)).

At the second step, the ALJ

must consider statements the claimant or others make about [his] impairment(s), [his] restrictions, [his] daily activities, [his] efforts at work, or any other relevant

12

statements [he] makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony in its administrative proceedings.

*Villegas Andino v. Comm'r of Soc. Sec.*, No. 18-CV-1780 (PKC), 2019 WL 4575364, at *5 (E.D.N.Y. Sept. 19, 2019) (quoting *Genier*, 606 F.3d at 49).

"[T]he subjective element of pain is an important factor to be considered in determining disability." *Perez v. Barnhart*, 234 F. Supp. 2d 336, 340 (S.D.N.Y. 2002) (quoting *Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984)). "Even if subjective pain is unaccompanied by positive clinical findings or other objective medical evidence, it may still serve as the basis for establishing disability." *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 435 (S.D.N.Y. 2010). A claimant "who alleges a disability based on the subjective experience of pain need not adduce direct medical evidence confirming the extent of the pain, but instead medical signs and laboratory findings which show that the claimant has a medical impairment which could reasonably be expected to produce the pain." *Meadors v. Astrue*, 370 F. App'x 179, 185 (2d Cir. 2010) (summary order) (internal quotation, citation, and alteration omitted); *see also id.* ("A finding that a claimant suffers from disabling pain requires medical evidence of a condition that could reasonably produce pain. It does not require objective evidence of the pain itself or its degree." (internal quotation and citation omitted)).

The applicable regulations also set out a seven-factor test to evaluate Plaintiff's own subjective statements regarding pain. *See* 20 C.F.R. § 404.1529(c)(3). "If the ALJ rejects plaintiff's testimony after considering the objective medical evidence and any other factors deemed relevant, he must explain that decision with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief." *Fernandez v. Astrue*, No. 11-CV-3896 (DLI), 2013 WL 1291284, at *18 (E.D.N.Y. Mar. 28, 2013) (quoting *Correale-*

*Englehart*, 687 F. Supp. 2d at 435). Here, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Tr., at 19.) The Court finds that remand is warranted because the ALJ improperly discounted Plaintiff's subjective complaints of pain and reported limitations in his functionality.

The ALJ reasoned that "[Plaintiff's] reported abilities are inconsistent with the alleged difficulties." (*Id.*) The ALJ noted that Plaintiff cleans, is able to dress and bathe, occasionally climbs stairs, and watches television. (*Id.*) However, the ALJ omitted other facts that qualified Plaintiff's ability to perform these daily activities, such as the fact that Plaintiff's ex-fiancée took care of him before they separated (*id.* at 40), that family members assist Plaintiff around the house (*id.* at 45), and that, while Plaintiff is able to get dressed on his own, he takes a longer time to do so (*id.* at 46). The ALJ further noted that Plaintiff's use of "a cardio bike and stair climber in addition to walking on a treadmill" is inconsistent with Plaintiff's "subjective allegations about the severity of his functional limitations." (*Id.* at 19.) Plaintiff's treating physicians, however, noted concerns regarding Plaintiff's weight and specifically encouraged and approved of Plaintiff's physical exercise for weight loss. (*See id.* at 289 ("He remains at least 50 pounds over of his baseline weight. He is doing stair climbing for exercise."); *id.* at 294 (noting that Plaintiff is gaining weight); *id.* at 299 (noting "[a]erobic conditioning and portion control for weight loss"); *id.* at 320 ("Since [the last checkup], he has lost a significant amount of weight. He was 326 pounds. Now, he is 267 pounds. He has been using cardio and bike three to four times a week. He has been walking on a treadmill."); *id.* at 325 ("Neutral to extension core and lumbar stabilization and aerobic conditioning and portion control for weight loss was encouraged.")).

However, in recommending physical exercise for his weight loss, Plaintiff's physicians also noted conditions limiting Plaintiff's ability to comply with these recommendations. (*See id.* at 341 ("He has unfortunately been gaining weight due to deconditioning and pain on mobilization. He is awaiting authorization for repeat physical therapy."); *id.* at 277 ("I reviewed some home exercise that he could start now, as it pertains to quadriceps activation."); *id.* at 292 ("He has been trying to work out as much as he can on his own, but his back does limit the amount of exercise he can do."); *id.* at 396 ("At this time, I commended [Plaintiff] on his weight loss. We discussed ways that he can continue along that [path] without over stressing the knee.").) These physical limitations, as described by Plaintiff's physicians, are consistent with Plaintiff's subjective statements regarding the severity and limiting effects of his symptoms. *See, e.g.*, *Walsh v. Colvin*, No. 13-CV-0603 (GTS) (ATB), 2014 WL 4966142, at *9 (N.D.N.Y. Sept. 30, 2014) (finding that plaintiff's testimony regarding her ability to perform homecare duties was qualified by splitting up her time doing such chores, and that this testimony was consistent with her "inability to sit for greater than 30 minutes").

In addition, "[a]n individual can perform each of these daily activities and still experience debilitating pain at the intensity and persistence and with the limiting effects [he] claims." *Larsen v. Astrue*, No. 12–CV–00414 (CBA), 2013 WL 3759781, at *3 (S.D.N.Y. July 15, 2013). "The Second Circuit has repeatedly recognized that '[a] claimant need not be an invalid to be found disabled.'" *Colon v. Astrue*, No. 10-CV-3779 (KAM), 2011 WL 3511060, at *14 (E.D.N.Y. Aug. 10, 2011) (quoting *Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988)). "Indeed, it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to

15

care for themselves." *Cabibi v. Colvin*, 50 F. Supp. 3d 213, 238 (E.D.N.Y. 2014) (internal quotation and citations omitted).

Plaintiff's efforts to obtain relief from his symptoms further support his credibility with regard to his subjective reports about the severity of his pain. *See Warthan v. Comm'r of Soc. Sec.*, No. 16-CV-0036 (GTS), 2017 WL 79975, at *13 (N.D.N.Y. Jan. 9, 2017) ("Plaintiff correctly argues that a longitudinal medical record demonstrating persistent, long-term attempts to obtain relief from symptoms will strongly indicate credibility regarding her alleged symptoms." (citation omitted)).   Here, the record contains numerous findings of Plaintiff's visits to his physicians regarding his lumbar spine and knee pain. On September 17, 2014, Plaintiff received "[r]ight L5 and L4 transforaminal epidurals" and a prescription for Percocet and Nucynta, which were prescribed through October 13, 2015. (Tr., 275–80.) Plaintiff received additional epidurals on October 13, 2014 (*id.* at 280); October 28, 2014 (*id.* at 283); and December 23, 2014 (*id.* at 288). On November 18, 2014, Plaintiff stated "he had 100% relief on his axial low back and right lower extremity pain for at least one week following the [last epidurals]." (*Id.* at 284.) Dr. Reimer noted that the "Nucynta ha[d] been suboptimal" and that Plaintiff was "interested in switching analgesics." (*Id.*) On January 9, 2015, Plaintiff stated he had "six days of external relief with transfemoral epidurals," but that his "symptoms ha[d] recurred." (*Id.* at 289.) In follow-up visits from January 9, 2015 through June 21, 2017, Plaintiff was prescribed Conzip (*id.* at 290, 294), Lorzone (*id.* at 290, 294, 298), Motrin (*id.* at 324), Flexeril (*id.* at 325, 348, 349), Celebrex (*id.* at 340, 349), Lidocaine (*id.* at 340), and Naprosyn (*id.* at 341). Plaintiff complained of lumbar pain at a follow-up visit on September 28, 2016, during which Dr. Reimer discussed oral steroids with Plaintiff and also indicated that he was concerned about Plaintiff's weight gain. (*Id.* at 348–49.) On June 21, 2017, Dr. Reimer noted "trigger point injection as requested" after Plaintiff followed

up again regarding lumbar pain.  (*Id.* at 392–93.)  The Court finds that the record evidence detailing Plaintiff's numerous visits to his doctors to obtain relief from his pain sufficiently corroborates Plaintiff's subjective allegations regarding the severity of his symptoms.

Additionally, the ALJ considered Plaintiff's assertions of pain unpersuasive because "the record indicates that [Plaintiff] maintained effort and resources to engage in drinking and smoking rather than pursue resources for medical care."  (*Id.* at 20.)  The ALJ found questionable Plaintiff's lack of "subsequent treatment following the physical therapy in 2016" and his failure to "obtain alternative health coverage such as Medicaid."  (*Id.*)  However, the law in this Circuit is clear that "[i]t is improper to fault a claimant for failing to seek medical treatment without considering the reasons the Plaintiff failed to pursue treatment."  *Crocco v. Berryhill*, No. 15-CV-6308 (MKB), 2017 WL 1097082, at *17 n.30 (E.D.N.Y. Mar. 23, 2017) ("Although an ALJ may find a plaintiff less credible if she failed to seek medical treatment, an ALJ is obligated to consider any explanation a plaintiff may have for such failure[.]" (citation omitted) (quoting *Snyder v. Colvin*, 667 F. App'x 319, 320 (2d Cir. 2016) (summary order)).  "Failure to seek medical treatment because a claimant is uninsured and cannot afford such treatment is not a basis to discredit the Plaintiff's testimony as to her symptoms."  *Id.* (citing *Burger v. Astrue*, 282 F. App'x 883, 884 (2d Cir. 2008) (summary order); *Williams v. Colvin*, No. 14-CV-5875, 2015 WL 5774875, at *4 (E.D.N.Y. Sept. 30, 2015)).  Here, Plaintiff indicated that he was uninsured and paid for his healthcare "with cash," which was from the "remaining money [Plaintiff] ha[d] left from [his] workman's comp settlement."  (Tr., at 43.)  Plaintiff stated that he saw his doctors on a limited basis, as they charged him "roughly $140 a visit for each doctor."  (*Id.* at 56.)  These facts support Plaintiff's explanation for infrequent visits to his doctors and do not otherwise negate Plaintiff's assertions regarding the severity of his pain and symptoms.

The ALJ's discrediting of Plaintiff's statements of pain based on Plaintiff's daily activities is thus not supported by substantial evidence and warrants remand. *See Archambault v. Astrue*, No. 09-CV-6363 (RJS) (MHD), 2010 WL 5829378, at \*30 (S.D.N.Y. Dec. 13, 2010) ("Plaintiff's ability to engage in certain limited daily activities does not provide evidence of his ability to perform sedentary work unless he can perform those daily activities at a level consistent with the demands of sedentary work."), *report and recommendation adopted*, 2011 WL 649665 (S.D.N.Y. Feb. 17, 2011); *see also Bradley v. Colvin*, 110 F. Supp. 3d 429, 446 (E.D.N.Y. 2015) (remanding and noting that "[w]hile [plaintiff] did engage in the daily activities of raising two children, driving an SUV locally, exercising periodically and performing some household duties with the help of her son, such conduct does not show that [plaintiff] is capable of performing full time light work" (internal record citations omitted)). Accordingly, for the reasons set forth above, the Court finds that the ALJ improperly discredited and dismissed Plaintiff's self-reports of the level of pain and physical impairment he experienced, and that the ALJ's RFC determination that Plaintiff is capable of performing sedentary work is not supported by Plaintiff's self-reported functioning and subjective complaints of pain.

### B.    Treating Physician Rule

"With respect to the nature and severity of a claimant's impairments, the SSA recognizes a treating physician rule[23] of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal

---

[23] Although "[t]he current version of the [Act]'s regulations eliminates the treating physician rule," the rule nevertheless applies to Plaintiff's claim, as the current regulations only "apply to cases filed on or after March 27, 2017." *Burkard v. Comm'r of Soc. Sec.*, No. 17-CV-290 (EAW), 2018 WL 3630120, at \*3 n.2 (W.D.N.Y. July 31, 2018); *see also* 20 C.F.R. § 404.1520(c). Because Plaintiff's claim was filed on February 17, 2015, the treating physician rule applies.

quotation, alterations, and citations omitted).  Under the treating physician rule, a treating source's opinion is given "controlling weight" so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 416.927(c)(2).  If the opinion of the treating physician is not given controlling weight, the ALJ must apply a number of factors in order to determine the opinion's proper weight.  *See Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).  These factors include: (i) the frequency of examination as well as the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the treating source's opinion; (iii) the extent to which the opinion is consistent with the record as a whole; (iv) whether the treating source is a specialist; and (v) other relevant factors.  *See* 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6).

In his RFC determination, the ALJ considered "the opinion of the treating and examining sources," Dr. Reimer, Dr. Sekhon, and Dr. Alvarez.  (Tr., at 21.)  Each physician submitted a disability determination to the ALJ: Dr. Reimer reported that Plaintiff was 75% disabled (*id.* at 299); Dr. Sekhon reported that Plaintiff had a 50% disability at the knee (*id.* at 287) and 25% permanent impairment (*id.* at 329); and Dr. Alvarez opined that Plaintiff had a 75% temporary impairment (*id.* at 361).  The ALJ determined that "the inconsisten[cy] between the disability percentages shows that they do not accurately and consistently reflect the extent of [Plaintiff]'s functional limitations," and added that "the record does not support the broad and inconsistent disability determinations."  (*Id.* at 21.)  As a result, the ALJ assigned "very limited weight" to the disability determinations of Plaintiff's three treating physicians.

The ALJ went on to consider "the [treating physicians'] opinions that reflected specific functional limitations."  (*Id.*)  The ALJ assigned "some weight" to Dr. Reimer's opinion that Plaintiff would be able to perform "occupations that require lifting less than 20 pounds, carrying

15 pounds, and standing for 10 minutes for every 30 minutes of sitting," finding this opinion to be "reasonably consistent with the findings throughout the record, including cleaning and using a stair climber, treadmill, and cardio bike." (*Id.*) The ALJ then considered Dr. Alvarez's opinion, first that Plaintiff "could return to sedentary work in an office setting sitting 50% of the time with brief periods of standing and walking on flat level surfaces" and later that Plaintiff "could occasionally perform reaching and overhead reaching," finding that this change in opinion "from sedentary to light suggests that the [Plaintiff]'s condition was not deteriorating, which is contrary to a finding in the record." (*Id.* at 21–22.) The ALJ nevertheless concluded that "the findings throughout the record do not completely support the limitations [assessed by Dr. Alvarez] given the claimant's reported abilities, including cleaning and using a stair climber, treadmill, and cardio bike. Therefore, I assign some weight to Dr. Alvarez's opinion." (*Id.* at 22 (internal record citations omitted).) The ALJ concluded ultimately that "[n]o single factor mentioned is conclusive on the issue of [Plaintiff]'s [RFC]," but that "when viewed in combination, the medical history and examination findings suggest that []he is not as limited as is alleged." (*Id.*)

The Court finds that remand is warranted given the ALJ's disregard of the treating physicians' disability determinations, his according of only "some weight" to each of Dr. Reimer and Dr. Alvarez's opinions—despite the fact that they effectively reached similar conclusions[24]—and his acknowledgement without further justification or explanation that no single factor was

---

[24] Indeed, Plaintiff's three treating experts all found that Plaintiff suffered from a significant degree of disability, albeit using different means of expressing and measuring the level and nature of the disability or impairment. (*Compare, e.g.*, Tr., at 299 (Dr. Reimer assessing Plaintiff as 75% disabled), *with id.* at 361 (Dr. Alvarez opining Plaintiff had 75% temporary impairment), *and id.* at 287, 329 (Dr. Sekhon reporting that Plaintiff had 50% disability of the knee and 25% permanent impairment).) At a minimum, the ALJ had a duty to clarify the potential discrepancies between these opinions, especially given the clear consistency between the opinions as to Plaintiff suffering from some degree and type of disability and/or impairment.

"conclusive," but that a "combination" of medical history and examination findings served as the basis for his RFC determination.  (*Id.*)  "The ALJ cannot cherry pick the medical source opinions and the treatment records to support [his] RFC determination."  *Maia v. Colvin*, No. 15-CV-584 (JGM), 2017 WL 715360, at *18 (D. Conn. Feb. 23, 2017); *see also Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004) ("It is grounds for remand for the ALJ to ignore parts of the record that are probative of the claimant's disability claim." (collecting cases)).

In sum, the ALJ not only failed to reconcile conflicting evidence with regard to Plaintiff's motor loss as documented by his treating physicians and discussed in the step-three analysis *supra*, but the ALJ failed to consider or discuss the treating-physician factors, *i.e.*, the factors an ALJ is required to consider in deciding what weight to give the opinions of a claimant's treating physician pursuant to 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6).  Nor did the ALJ properly examine the treating physicians' opinions in light of Plaintiff's self-reported functioning and subjective complaints of pain, as previously discussed.  For these reasons, the Court concludes that remand is warranted.

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion.  The Commissioner's decision is remanded for further consideration consistent with this Memorandum and Order. The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated:  July 27, 2020
         Brooklyn, New York